IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL EGLER, | ) | CASE NO. 3:09CV2163 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE POLSTER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| TIM BRUNSMAN, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Carl Egler ("Egler") for a writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 on September 15, 2009.  Egler is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence

in the case of *State of Ohio vs. Egler*, Case No. 06-CR-9739 (Defiance County 2006).

For the reasons set forth below, Egler's petition should be dismissed.

I.

The state appellate court reviewing Egler's conviction found the following facts to

be relevant to his case:

{¶ 2} In December 2006, the Defiance County Grand Jury indicted Egler for ten
counts of rape of a victim less than ten years of age in violation of R.C.
2907.02(A)(1)(b), felonies of the first degree.  Each count in the indictment was
identically worded, with the exception of the time period alleged, stating that:

* * at Defiance County, Ohio, Carl W. Egler, Jr. did, engage in sexual
conduct with another, not his spouse, the victim being less than thirteen
(13) years of age, in violation of Section 2907.02(A)(1)(b) of the Revised

Code, Rape, a Felony of the First Degree, punishable by life imprisonment, the victim being less than ten (10) years of age, and against the peace and dignity of the State of Ohio[.]

Each count enumerated a one-month period from January through October of 2006. The indictment stemmed from accusations by Egler's minor daughter, J.E., that he had sexually abused her. Egler subsequently entered a plea of not guilty to all counts in the indictment.

{¶ 3} In April 2007, Egler moved for a bill of particulars requesting, in part, "the date, time and specific place on which the offense is alleged to have occurred [and] the method or means by which the crime is alleged to have been committed."

{¶ 4} In June 2007, the State filed a bill of particulars in response to Egler's request stating:

The State expects the evidence to demonstrate that the offenses charged in Counts One through Ten of the Indictment reflect not less than ten separate incidents of sexual conduct between [Egler] and the same female victim, being a child who was less than 10 years of age at the time each act occurred, the child's date of birth being November 11, 1998. The State further expects the evidence to demonstrate that the above-referenced acts of sexual conduct occurred at a residence located at 28015 Jewell Rd. in Defiance County, Ohio. The State's evidence will further demonstrate that the sexual conduct referred to in each of the 10 counts included the act of fellatio involving the victim's mouth and [Egler's] penis. The evidence will further show that sexual conduct in the form of vaginal intercourse also occurred. The evidence will also show that the sexual conduct between [Egler] and the above-referenced child at the above-referenced location, occurred not less than once each month, each and every month between and including the months of January, 2006 and October, 2006. Lastly, the evidence will show that, at no time, was the child victim the spouse of [Egler].

(June 2007 Bill of Particulars, pp. 1-2).

{¶ 5} Thereafter, Egler moved the trial court for an order that the prosecution provide a more defined bill of particulars, alleging that the June 2007 Bill of Particulars was insufficient as to the nature of the alleged acts and as to the dates of the alleged acts. Additionally, Egler filed a notice of alibi stating that he was not at home with J.E. at the time of the alleged offenses, and that he would provide notice of his whereabouts once the state provided notice of the offenses.
{¶ 6} In July 2007, Egler moved the trial court to dismiss the December 2006 indictment.

2

{¶ 7} In October 2007, the trial court filed a judgment entry overruling Egler's June 2007 motion for a more defined bill of particulars.  Additionally, the judgment entry provided that a negotiated plea agreement had taken place by which the State agreed to amend the first and last counts of rape by deleting the penalty enhancer that the victim was less than ten years of age in exchange for the defendant entering a plea of no contest to the two amended counts of rape. The remaining eight counts were dismissed pursuant to negotiations.  At the hearing, Egler's counsel stated:

> * * * the defense does reserve the right to appeal the decisions as it [sic] pertains to the bill of particulars and the sufficiency thereof and the sufficiency of the indictment, but only those two issues.

(Oct. 2007 Hearing Tr., p. 5).

{¶ 8} Thereafter, Egler moved to withdraw his not guilty pleas and entered a plea of no contest to both rape counts.  The trial court accepted Egler's pleas and found him guilty of two counts of rape in violation of R.C. 2907.02(A)(1)(b).  The trial court sentenced Egler to an eight-year prison term on the first count of rape and to a seven-year prison term on the last count of rape, to be served consecutively for an aggregate fifteen-year prison term.  Additionally, the trial court determined that Egler was an aggravated sexually oriented offender pursuant to R.C. 2950.

*State v. Egler*, 2008 WL 3271234, at *1 (Ohio App. Aug. 11, 2008).

Egler timely appealed his conviction to the state appellate court.  He raised two

assignment of error on appeal:

### Assignment of Error No. I

The Trial Court erred by refusing to dismiss the faulty indictment against Mr. Egler and/or to order the state to provide a more specific Bill of Particulars, in violation of his right under the United States Constitution and under the Ohio Constitution to presentment.

### Assignment of Error No. II

The Trial Court erred by denying the defense motion for a proper Bill of Particulars, in violation of the right of the accused under the United States Constitution and under the Ohio Constitution to notice and to protection from double jeopardy.

On August 11, 2008, the state appellate court overruled Egler's assignments of error

3

and affirmed the judgment of the trial court.

Egler timely appealed the appellate court's decision to the Ohio Supreme Court.

In his memorandum in support of jurisdiction, Egler asserted two propositions of law:

Proposition of Law No. I:  Trial Court erred by refusing to dismiss the faulty indictment against Mr. Egler and/or to order the state to provide a more specific Bill of Particulars, in violation of his right under the United States Constitution and under the Ohio Constitution to presentment.

Proposition of Law No. II:  Trial Court erred by denying the defense motion for a proper Bill of Particulars, in violation of the right of the accused under the United States Constitution and under the Ohio Constitution to notice and to protection from double jeopardy.

On January 28, 2009, the Ohio Supreme Court denied Egler leave to appeal and

dismissed his appeal as not involving any substantial constitutional question.

Egler filed a petition for a federal writ of habeas corpus in this court on

September 15, 2009.  Egler asserts six grounds for relief in his petition:

Ground One:  The trial court erred by refusing to dismiss the faulty indictment against Mr. Egler and/or to order the State to provide a more specific Bill of Particulars, in violation of his right under the U.S. Constitution to presentment.

Mr. Egler was indicted for 10 counts of rape, each using identical language except for isolating a specific month for each count, over a period of 10 months. The bill of particulars specified the residence where the alleged acts occurred, stating that each and every count involved "not less than" 10 acts over this 10-month period, and "not less than" once per month.  The State specified that each act involved fellatio.  The discovery indicated up to 16 incidents per month. The narrative statement described wild uncertainty as to when this occurred and what happened.  Because the vill [sic] of particulars explained a vague indictment in a manner inconsistent with the evidence and with the statement of the child, it appeared that the grand jury could not have considered facts resulting in this indictment as worded and had not issued an indictment that established specific acts.  However, the trial court, the Ohio appellate court, and the Ohio Supreme Court completely excused all of this because children get confused.  Whereas that may be true, nontheless [sic] the United States Constitution requires that alleged acts be submitted to a grand jury, not generalized claims of a course of conduct over a period of time.

4

Ground Two:  The Trial Court erred by denying the defense motion for a proper bill of particulars, in violation of tghe [sic] right of the accused under the United States Constitution to notice and to protection from Double Jeopardy.

As mentioned with respect to Ground One, the indictment and bill of particulars did nothing to explain what happened and when, allegedly.  This resulted in an inability of the accused to defend any alleged act, as he had no idea what claimed act out of anywhere from 2 to hundreds (depending on which story was referenced) was the subject of any count or of the indictment in entirety.  As the State alleged multiple acts each month, no one can tell to this date which act resulted in the convictions in this case, let alone which acts were prosecuted in this case.  Rather, the State was allowed to simply claim a number of acts done ("lots" or "every other day for t10 months"), state a number of "representative" counts 1 per month), and then go from there.  The Ohio appellate court and the Ohio Supreme Court excused all of this because children get confused.

Respondent filed an Answer/Return of Writ on February 26, 2010.  Doc. No. 10.  Egler filed a Traverse on March 1, 2010.  Doc. No. 11.  Thus, the petition is ready for decision.

II

*A. Jurisdiction*

The Court of Common Pleas of Defiance County, Ohio sentenced Egler.  Egler filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Defiance County is within this court's geographic jurisdiction.  This court has jurisdiction over Egler' petition.

5

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Egler's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity

6

between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Egler has no state remedies available for his claims.  Because no state remedies remain available to him, Egler has exhausted state remedies.

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court

7

in the state deprives a federal court hearing a habeas petition of jurisdiction on that

issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Respondent does not argue that Egler has defaulted either of his claims.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered

the standard of review that a federal court must apply when deciding whether to grant a

writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

if the state court's decision is contrary to clearly established federal law or was based

on an unreasonable determination of the facts in light of the evidence. *Carey v.*

*Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362,

379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not

its dicta, and the law must be clearly established at the time of the petitioner's

conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court. Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly

8

> established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Egler's two grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.    *Ground one:  Whether the trial court erred by refusing to dismiss the indictment or order the state to provide a more specific bill of particulars*

Egler contends in his first ground for relief that the trial court erred by refusing to dismiss a faulty indictment against Egler or to order the state to provide a more specific bill of particulars.  According to Egler, this violated his due process right to an adequate presentment of the charges against him.

The grand jury indicted Egler on ten counts of rape of a victim less than ten years of age.  Each count in the indictment was identically worded, with the exception of the time period alleged.  Each count specified a one-month period in January through

October 2006.  In response to Egler's motion for a bill of particulars, the state filed a response detailing, among other things, the location and type of conduct, and indicating that the conduct "occurred not less than once each month, each and every month between and including the months of January, 2006 and October, 2006."  Egler, 2008 WL 3271234 at *1.

The court overruled Egler's motion for a more detailed bill of particulars.  It also overruled his motion to dismiss the indictment and for an in-camera inspection of the grand jury transcripts.  The court conducted an in-camera inspection of the transcripts and, without permitting Egler to inspect those transcripts, denied Egler's motion to dismiss.

Egler's argument in support of his first ground for relief is not entirely clear.  He offers the following facts and argument in support of ground one:

> Mr. Egler was indicted for 10 counts of rape, each using identical language except for isolating a specific month for each count, over a period of 10 months. The bill of particulars specified the residence where the alleged acts occurred, stating that each and every count involved "not less than" 10 acts over this 10-month period, and "not less than" once per month. The State specified that each act involved fellatio. The discovery indicated up to 16 incidents per month. The narrative statement described wild uncertainty as to when this occurred and what happened. Because the vill [sic] of particulars explained a vague indictment in a manner inconsistent with the evidence and with the statement of the child, it appeared that the grand jury could not have considered facts resulting in this indictment as worded and had not issued an indictment that established specific acts. However, the trial court, the Ohio appellate court, and the Ohio Supreme Court completely excused all of this because children get confused.  Whereas that may be true, nontheless [sic] the United States Constitution requires that alleged acts be submitted to a grand jury, not generalized claims of a course of conduct over a period of time.

Petition, Doc. No. 1, p. 6.  This statement can be interpreted to contain two distinct claims regarding the unconstitutionality of Egler's indictment:  (1) it was unconstitutional

because the allegations were not submitted to a grand jury, and (2) it was unconstitutional because it consisted of generalized claims of a course of conduct over a period of time rather than particularized facts distinguishing each alleged act from the others.[1]

The court addresses the second of these claims in the examination of Egler's second ground for relief, to which it is closely related.  As regard's Egler's apparent claim that the indictment was unconstitutional because the allegations were not submitted to a grand jury, it is settled law that the Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury indictment against the states. *See, e.g., Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000).  Consequently, Egler had no right to presentment to a grand jury when he was tried by the State of Ohio. Indeed, Egler concedes this in his traverse.  Traverse at 18.  That portion of Egler's first ground for relief which appears to claim that Egler's indictment was unconstitutional because the allegations were not submitted to a grand jury is, therefore, without merit.

B.     *Ground two: The Trial Court erred by denying the defense motion for a proper bill of particulars, in violation of tghe [sic] right of the accused under the United States Constitution to notice and to protection from Double Jeopardy.*

Egler contends in his second ground for relief that the trial court erred by denying his motion for a more detailed bill of particulars, in violation of his due process rights to

---

[1]  The ambiguity of the last sentence of Egler's argument permits interpreting that sentence as asserting two distinct claims.  The court realizes that the more likely interpretation, given Egler's concession that the right to presentment to a grand jury is not incorporated against the states, is as follows:   "The Constitution requires that any allegations of multiple alleged crimes presented to a grand jury consist of distinguishable alleged acts, rather than multiple and indistinguishable alleged crimes subsumed within a general course of conduct over time."  The merits of this latter interpretation are addressed in the analysis of Egler's second ground for relief.

notice of the charges against him and to be free from double jeopardy.  Respondent

denies that the indictment and bill of particulars violated Engler's due process.  Egler

cites *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), in support of this argument, as

he did in the state appellate court on direct appeal.  A close look at *Valentine* is

necessary to understand Egler's argument and the response of the state appellate

court.

        *1.  Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005)

        Michael Valentine ("Valentine") was convicted of 20 counts of child rape and 20

counts of felonious sexual penetration of a minor for sexually abusing his stepdaughter.

The indictment described 40 offenses as occurring between March 1, 1995 and January

16, 1996.  Each count of rape alleged that Valentine "unlawfully engaged in sexual

conduct with [the stepdaughter] not his spouse by purposely compelling her to submit

by the use of force or threat of force, [the stepdaughter] being under the age of 13

years, to-wit: d.o.b. 11-18-87."  *Valentine*, 395 F.3d at 629 (quoting the indictment).  The

indictment did not include any information to distinguish one count of rape from another.

Similarly, each count of felonious sexual penetration alleged that Valentine "unlawfully

without privilege to do so inserted a part of the body, an instrument, apparatus or other

object to-wit: finger, into the vaginal or anal cavity of another, to-wit: [the stepdaughter]

not the spouse of the offender and who was under the age of 13 years, to-wit: d.o.b.

11-18-87, by purposely compelling her to submit by force or threat of force."  *Id.*  There

was no additional detail.  The bill of particulars simply restated the allegations, adding

only the family home as the place at which all 40 offenses occurred.

        At trial, the only witness to testify to the number and nature fo the assaults was

12

the alleged victim:

> She testified that Valentine forced her to perform fellatio in the family living room on "about twenty" occasions and that Valentine digitally penetrated her vagina in the family living room on "about fifteen" occasions.  The child went on to testify generally as to further similar incidents occurring in her bedroom, in her siblings' bedroom, and in her mother and Valentine's bedroom.  She additionally testified that Valentine achieved anal penetration with his penis on "about ten" occasions. As the Petitioner points out, the victim altered her numbers somewhat during cross-examination.

*Id.*  When a jury returned a verdict of guilty as to all counts, the court sentenced Valentine to 40 consecutive life terms.  The state appellate court affirmed all 20 counts of rape and affirmed 15 of the 20 counts of felonious sexual penetration, finding no evidence to support them.  When the Ohio Supreme Court denied leave to appeal, Valentine unsuccessfully sought state post-conviction remedies.

Valentine filed a petition for a federal writ of habeas corpus in the Northern District of Ohio.  The district court granted the writ upon one of Valentine's four grounds for relief, that his conviction violated his right to due process because his indictment did not specify the dates of his alleged offenses or specify which conduct occurred on which date.  The district court found that the identical counts in the indictment violated Valentine's due process right to be notified of the crime of which he was charged and to protection from double jeopardy.

The state appealed the district court's decision to the Sixth Circuit.  The Sixth Circuit court found that the state appellate court had correctly identified the federal constitutional  issue at stake in Valentine's case as whether the lack of specificity as to dates and conduct in his indictment denied Valentine due process of law. Consequently, the Sixth Circuit found that the issue on appeal was whether Ohio courts

13

unreasonably applied Supreme Court precedent in finding that Valentine's indictment did not violate due process.

In examining the arguments of the parties, the Sixth Circuit relied primarily upon *Russell v. United States,* 369 U.S. 749 (1962), for criteria for determining whether an indictment is sufficient:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

*Valentine*, 395 F.3d at 631 (quoting *Russell*, 369 U.S. at 763-64).  Following *Russell*, *Hamling v. United States,* 418 U.S. 87 (1974), and *United States v. Cruikshank,* 92 U.S. 542 (1875), the Sixth Circuit held, "[A]n indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy.  *Valentine*, 395 F.3d at 631 (footnote omitted).  The court's conclusion after applying these criteria to Valentine's case was the following:

> While the indictment in this case did comply with the first prong of *Russell* by adequately setting out the elements of the charged offense, the multiple, undifferentiated charges in the indictment violated Valentine's rights to notice and his right to be protected from double jeopardy.  The failure of the Ohio Court of Appeals to rectify these violations constitutes an unreasonable application of well-established constitutional law as announced by the Supreme Court.

*Id.*

The Sixth Circuit's reasoning in *Valentine* is directly applicable to Egler's circumstances and arguments:

> This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice

14

requirements.  Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved.  The Ohio Court of Appeals found that there was no evidence the state had more specific information regarding the time period of the abuse.  Valentine's claims regarding the lack of time- and date-specific counts therefore fail.

The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places.  If there had been singular counts of each offense, the lack of particularity would not have presented the same problem.  Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made.  Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts.  In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place.  Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times.  Outside of the victim's estimate, no evidence as to the number of incidents was presented.

Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own.  The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20.  Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest.  Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents.  The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts.  Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

As the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself.

*    *    *    *

The indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced.  Valentine was prosecuted and convicted for a generic pattern of abuse rather than for forty separate abusive incidents. States have the authority to enact criminal statutes regarding a "pattern" or a "continuing course" of abuse.  They do not have the power to prosecute one for a pattern of abuse through simply charging a defendant with the same basic offense many times over.

15

*   *   *   *

Due process also requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy. In the present case, the indictment presented two important double jeopardy problems.  First, there was insufficient specificity in the indictment or in the trial record to enable Valentine to plead convictions or acquittals as a bar to future prosecutions.  Second, the undifferentiated counts introduced the very real possibility that Valentine would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense.

*   *   *   *

In this case, there was no specificity regarding the factual offenses Valentine allegedly committed.  If Valentine had been acquitted of these 40 charges, it is unclear what limitations would have been imposed on his re-indictment.  Would double jeopardy preclude any prosecution concerning the abuse of this child victim, the abuse of this victim during the stated time period, the abuse of this victim at their residence, the stated sexual offenses in the indictment, the offenses offered into evidence at trial, or some group of forty specific offenses? We cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury.  If Valentine had been found not guilty, it is not clear to what extent he could ably assert that his acquittal barred prosecution for other similar incidents.

*   *   *   *

Requiring some minimal differentiation between criminal counts is quite different from requiring "exact time and place specifications."  Certainly, this opinion does not require that indictments allege the date, hour, and precise location of crimes. Instead, the defendant, the judge, and the jury must be able to tell one count from another.

To be sure, differentiation will often require reference to date ranges or time ranges or certain locations or certain actions.  But, differentiation does not require overly-burdensome precision.

*Valentine*, 395 F.3d at 632-37 (footnotes and citations omitted).  The Sixth Circuit

concluded that the indictment and bill of particulars permitted a conviction and sentence

for one count each of rape and felonious sexual penetration.  Any additional convictions,

it held, would violate due process by providing Valentine with inadequate notice to

16

defend himself and providing inadequate protection against double jeopardy.  The court

vacated, therefore, all other counts of which Valentine had been convicted.

> 2.  *Egler's Direct Appeal in the State Appellate Court*

On direct appeal to the state appellate court, Egler argued, as he does here, that

the trial court erred by denying his motion for a more detailed bill of particulars, in

violation of his due process rights to notice of the charges against him and to be free

from double jeopardy.  The state appellate court addressed these claims in its decision:

> We find the case sub judice to be distinguishable from *Valentine* because the
> indictment and bill of information provided Egler with adequate notice of the
> offenses charged as well as protection against double jeopardy.
>
> Here, the indictment does not specifically enumerate every instance of sexual
> conduct alleged by the victim over the ten-month period, but instead sets forth a
> single representative count of sexual conduct for each month during the
> ten-month period.  This Court has previously found that "the details of every
> instance need not be established in the indictment itself.  Rather, it is enough that
> the bill of particulars provide sufficient detail to connect each charge to a specific
> incident and provide the defendant with adequate notice of the crimes charged."
> *State v. Van Voorhis,* 3d Dist. No. 8-07-23, 2008-Ohio-3224, ¶ 41, citing
> *Valentine,* 395 F.3d at 626.  Here, the June 2007 Bill of Particulars provided that
> "the sexual conduct referred to in each count of the indictment included the act of
> fellatio involving the victim's mouth and [ Egler's] penis" and further specified that
> "sexual conduct in the form of vaginal intercourse also occurred."  Further, the bill
> of particulars specified that each type of conduct occurred not less than once
> each month during the ten-month period.  We find that the bill of particulars
> adequately provided Egler with notice of the conduct with which he was charged
> and against which he must defend.  See *Van Voorhis,* 2008-Ohio-3224, at ¶¶
> 42-43. § ¶ 24}  Additionally, we find that the indictment/bill of particulars did not
> prejudice Egler by making him unable to provide a notice of alibi.  Courts have
> found that a defendant is entitled to specific dates where they are necessary for
> his defense-such as where he asserts an alibi. See  *Yaacov,* supra.  The
> Supreme Court of Ohio has provided the example that such prejudice may occur,
> and thus specific dates would be required, where "the defendant had been
> imprisoned or was indisputably elsewhere during part *but not all* of the intervals
> of time set out in the indictment."  *State v. Sellards* (1985), 17 Ohio St.3d 169,
> 172, 478 N.E.2d 781 (emphasis added).  In light of this example, courts have
> posited that, where a defendant generally denies all counts in the indictment,
> specific dates are no longer necessary.  *State v. Lawwill,* 8th Dist. No. 88251,

2007-Ohio-2627, ¶ 14, citing *Yaacov,* supra.  Here, as Egler's defense was a denial of any sexual conduct with J.E. and his notice of alibi contended that he was never alone with the child during the ten-month period alleged, we cannot see how more specific dates and/or times would be necessary for his defense. See *Sellards,* 17 Ohio St.3d at 172, 478 N.E.2d 781.

Finally, we find that the indictment protects Egler against double jeopardy because, unlike the defective indictment in *Valentine,* Egler's indictment differentiated the counts by time period, each alleging a different month.  As the counts are differentiated, we find that Egler is protected against a subsequent prosecution for the same conduct. See *Van Voorhis,* 2008-Ohio-3224, at ¶ 44.

As the indictment and bill of particulars provided Egler with notice and protected him from double jeopardy, the trial court did not err in denying Egler's motion for a more specific bill of particulars.

*Egler*, 2008 WL 3271234 at *5-*6.  The state appellate court concluded that because the indictment and the bill of particulars provided Egler with sufficient notice and protected him from double jeopardy, the trial court did not err by denying Egler's motion for a more specific bill of particulars.  Consequently, it dismissed this assignment of error as without merit.

### 3.  Application to Egler's habeas petition

Egler's indictment and bill of particulars satisfied each of the three requirements for a constitutional indictment.  First, it contained the elements of the charged offense. The indictment charged Egler with rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b).  That subsection provides in relevant part as follows:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender . . . when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

Egler's indictment read in relevant part:

[A]t Defiance County, Ohio, Carl W. Egler, Jr. did, engage in sexual conduct with another, not his spouse, the victim being less than thirteen (13) years of age, in violation of Section 2907.02(A)(1)(b) of the Revised Code, Rape, a Felony of the

18

First Degree, punishable by life imprisonment, the victim being less than ten (10) years of age, and against the peace and dignity of the State of Ohio . . . .

Egler does not claim that the indictment was defective in this respect.

Second, the indictment and bill of particulars gave Egler adequate notice of the charges against him.  The bill specified the acts alleged of Egler, *viz.* fellatio and intercourse, specified that they took place at the residence at 28015 Jewell Rd. in Defiance County, Ohio, and specified that they occurred with a 10-year old born on November 11, 1998.  The bill also described when the acts occurred.  That is, it alleged that at least one act occurred in each of the ten months from January, 2006 through October, 2006.  Although Egler objects that this notice and bill of particulars failed to provide adequate notice pursuant to *Valentine*, Egler errs.

The problem with the notice in *Valentine* was that it was impossible to distinguish among the 20 alleged counts of rape or 20 alleged counts of felonious sexual penetration.  All 20 alleged instances of each count were alleged to have occurred within a single span of time, March 1, 1995 and January 16, 1996.  Consequently, individual instances of each count, for all practical purposes, became a single course of conduct during the named period, except that each of the two alleged courses of conduct subjected Valentine to 20 consecutive sentences.  But this is not true in Egler's case.

Egler's indictment specified ten counts, one in each of ten consecutive one-month periods.  Whereas it was impossible for a jury to find that Valentine was, for example, guilty on count four of his indictment but not guilty on count six, this was entirely possible in Egler's case.  The counts of Egler's indictment were distinguishable

because the alleged acts were described as occurring in separate and distinguishable time periods.  This is sufficient, according to *Valentine*:  "[D]ifferentiation will often require reference to date ranges or time ranges or certain locations or certain actions.  But, differentiation does not require overly-burdensome precision."  *Valentine*, 395 F.3d at 637.  *Valentine* notes that courts have found that time ranges as long as three years satisfy the requirements of due process.  *Id.* at 632.  For these reasons, the ten one-month periods that distinguished each of the ten counts against Egler did not offend due process.  This differentiation between counts of the indictment also contradicts the second claim in Egler's first ground for relief, that the indictment was unconstitutional because it consisted of generalized claims of a course of conduct over a period of time rather than particularized facts distinguishing each alleged act from the others.

Third, Egler's indictment and bill of particulars protected Egler against double jeopardy.  Each count of the indictment alleged that the specified conduct "occurred not less than once each month."  The burden on the state was to prove that one instance of the alleged conduct occurred in each of the designated months.  While it is true that the state might have attempted to prove more than one instance of alleged conduct in any month, that would not have constituted double jeopardy because only one count of rape was charged as occurring in each month.  A finding of "not guilty" on any count would have established as *res judicata* that Egler had not committed any act of rape involving the alleged victim in the relevant month.  The bar against double jeopardy would, therefore, prohibit a second indictment for rape involving that alleged victim in that month.

In sum, Egler's indictment satisfied all three requirements imposed by due

20

process:  (1) It contained the elements of the charged offense; (2) it gave Egler adequate notice of the charges; and (3) it protected Egler against double jeopardy. *Valentine* does not support Egler's contention that his indictment gave inadequate notice or failed to protect Egler against double jeopardy.  Consequently, the decision of the state appellate court that Egler's indictment comported with due process was not an unreasonable application of the holdings of the United States Supreme Court as interpreted by the Sixth Circuit in *Valentine*.

Moreover, even if this court is incorrect in asserting that the state appellate court's decision is consistent with *Valentine*, it cannot be said that the state appellate court's application of the holdings of the Supreme Court as interpreted by *Valentine* was *unreasonable*.  Egler must show that the state appellate court *unreasonably* applied a holding of the Supreme Court to obtain habeas relief.  He has not done this.

For these reasons, the second part of Egler's first ground for relief and the entirety of Egler's second ground for relief should be dismissed.

IV.

For the reasons given above, Egler's petition for a writ of habeas corpus should be dismissed as without merit.


Date:  December 10, 2010                    */s/ Nancy A. Vecchiarelli*
                                            United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections**

21

within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.